## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 08 2019, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Taylor C. Byrley
Angela Sanchez
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Johnathon B. Franzell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 8, 2019

Court of Appeals Case No.
18A-CR-2806

Appeal from the
Dubois Superior Court

The Honorable
Mark R. McConnell, Judge

Trial Court Cause No.
19D01-1710-F5-1047

**Kirsch, Judge.**

[1] Johnathon B. Franzell ("Franzell") pleaded guilty to trafficking with an inmate[1] as a Level 5 felony and was sentenced to four years in the Indiana Department of Correction ("the DOC"), which were ordered to be served consecutive to sentences ordered in two other cause numbers. Franzell appeals his sentence and raises the following restated issues:

I.   Whether the trial court abused its discretion in sentencing Franzell because it did not find a mitigating factor that was clearly supported by the record and because it found an aggravating factor that was not supported by the record;

II.  Whether Franzell's sentence is inappropriate in light of the nature of the offense and the character of the offender; and

III. Whether Franzell's sentence was required to be served consecutively under Indiana Code section 35-50-1-2(e).

[2] We affirm.

## Facts and Procedural History

[3] On October 12, 2017, Franzell was incarcerated in the Dubois County Security Center while serving a sentence in Cause Number 19D01-1101-FB-24 ("Cause 24") and awaiting sentencing in Cause Number 19C01-1701-F5-114 ("Cause 114"). *Tr.* at 3-4; *Appellant's App. Vol. 2* at 19. The Dubois County Jail commander received information that drugs were being smuggled into the jail

---

[1] *See* Ind. Code § 35-44.1-3-5(b)(1).

and were possibly located in a contact solution bottle behind the light in cell D-3. *Appellant's App. Vol. 2* at 9, 18. Officers went to cell D-3 to investigate, and when they got there, they saw an inmate, Damion Pryor ("Pryor"), pick up a cup and drink all the liquid inside the cup before the officers could begin their search. *Id.* at 9. After reviewing several jail calls by inmates and speaking with other inmates, the officers determined that Franzell was the one who had arranged for the drugs to be brought into the facility. *Id.* at 9-10.

[4] Officers interviewed Franzell, and he told them that he had arranged for the drugs to come into the facility and that the drugs were a form of payback from someone who owed him money. *Id.* at 10. After analyzing Franzell's phone calls, officers determined that Franzell was contacting his step-daughter to obtain the drugs and that she would find someone else to bring them to the jail because she did not want to transport the drugs to the jail. *Id.* When the drugs arrived in the jail, the inmates would place the liquid, which contained methamphetamine, on a mirror and wait for it to dry, then scrape up the powder and snort it. *Id.* at 9. Franzell told officers that this was the second time that drugs had come into the facility in a contact solution bottle; he also stated that the first time had been a few days earlier, but that delivery had been too weak to get anything from it. *Id.* at 10.

[5] The officers then tried to speak to Pryor, who immediately became angry and refused to talk with the officers. *Id.* at 10. They noticed that Pryor was acting strangely and that his eyes were rolling back into his head. *Id.* The officers took Pryor to the emergency room and informed the staff that they believed

Pryor had ingested drugs at the jail. *Id.* When asked by the nurses what he had taken, Pryor told them that he was under the influence of methamphetamine and that he had been taking methamphetamine for the past several days. *Id.* at 10-11. Pryor informed the nurses that he had drunk the methamphetamine but did not know how much he ingested and that he had been awake for four days straight. *Id.* at 11. Lab results indicated that Pryor was under the influence of amphetamines, methamphetamine, and ecstasy. *Id.*

[6] On October 16, 2017, the State charged Franzell with one count of trafficking with an inmate as a Level 5 felony. On May 17, 2018, Franzell pleaded guilty to the charge, and on August 15, 2018, the trial court sentenced him to four years in the DOC. This sentence was ordered to be served consecutive to the sentences in Cause 24 and Cause 114. *Id.* at 12. In sentencing Franzell, the trial court found as aggravating factors Franzell's extensive criminal history, the fact that the offense occurred while Franzell was serving another sentence, and the harm or injury suffered as a result of the offense was greater than the elements of the offense. *Tr.* at 21-22. The trial court stated that it considered Franzell's remorse and the fact that his imprisonment might cause undue hardship to his dependents as mitigating factors but gave them little weight and found the aggravating factors to outweigh the mitigating factors. *Id.* at 22-23. Franzell now appeals.

# Discussion and Decision

## I.    Aggravating and Mitigating Factors

[7]    Franzell contends that the trial court abused its discretion when it sentenced him because it failed to consider a mitigating factor that was supported by the record and relied on an improper aggravating factor.  Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion.  *Forshee v. State*, 56 N.E.3d 1182, 1185 (Ind. Ct. App. 2016).  "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom."  *Id.* (quotation marks omitted).  When imposing a sentence in a felony case, the trial court must provide a reasonably detailed sentencing statement explaining its reason for imposing the sentence.  *Id.*  The trial court can abuse its discretion in four ways when sentencing a defendant:  (1) failing to enter a sentencing statement at all; (2) finding an aggravating circumstance that is not supported by the record; (3) failing to find a mitigating circumstance that is significant and supported by the record; and (4) relying on reasons that are improper as a matter of law.  *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007).

[8]    Franzell first argues that the trial court abused its discretion in sentencing him because it failed to consider a significant mitigating factor that was clearly supported by the record.  He asserts that his guilty plea should have been found to be a significant mitigator because it spared the State the expense of a trial.

[9] The determination of mitigating circumstances is within the discretion of the trial court. *Rogers v. State*, 878 N.E.2d 269, 272 (Ind. Ct. App. 2007), *trans. denied*. The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and it is not required to give the same weight to proffered mitigating factors as does a defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Edsall v. State*, 983 N.E.2d 200, 205 (Ind. Ct. App. 2013). If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, it is not obligated to explain why it has found that the factor does not exist. *Anglemyer*, 868 N.E.2d at 493.

[10] Here, the trial court did not ignore the fact that Franzell pleaded guilty and showed remorse. In fact, it acknowledged his guilty plea and remorsefulness and considered it as a mitigating factor but stated that it gave it "very little weight." *Tr.* at 22. The trial court was not required to give the guilty plea the weight Franzell requested, so its decision to give it less weight cannot be an abuse of discretion. *See Rogers*, 878 N.E.2d at 272. Because Franzell's guilty plea was not ignored as a mitigating factor by the trial court, Franzell's argument amounts to a request for this court to reweigh a sentencing factor already considered by the trial court, which we cannot do. *Anglemyer*, 868 N.E.2d at 490-91.

[11] Franzell next argues that the trial court abused its discretion when it found that the harm or injury suffered as a result of the offense was significant and greater

than the elements of the offense to be an aggravating factor. He contends that his actions in committing the offense of trafficking with an inmate "did not exceed, even slightly, the elements required by the statute." *Appellant's Br.* at 11. He, therefore, asserts that this aggravating factor was not supported by the record.

[12] The crime to which Franzell pleaded guilty, trafficking with an inmate, requires a showing that a person, without prior authorization of someone in charge of the penal facility, knowingly or intentionally delivered or carried a controlled substance into the penal facility. Ind. Code § 35-44.1-3-5(b). The evidence in the record establishes that Franzell, without authorization of anyone in charge of the penal facility, knowingly and intentionally arranged for a controlled substance to be brought into the facility and delivered to an inmate. These facts provide evidence beyond what is required by the elements. The evidence supports the finding by the trial court that the harm, injury, loss, or damage suffered by the victim was significant. The victim in this case was Pryor, who ingested the methamphetamine that Franzell brought into the facility. Pryor drank a cup of the methamphetamine and water mixture that was contained in the contact solution bottle, which was how the drugs were brought into the facility. *Appellant's App. Vol. 2* at 10. The harm that Pryor suffered was significant because as a result of Franzell's action of delivering the drugs into the facility, Pryor ingested a potentially lethal amount of methamphetamine and had to be taken to the emergency room for treatment. *Id.* We conclude

that the trial court did not abuse its discretion in its finding of aggravating and mitigating factors.

## II.    Inappropriate Sentence

[13]    Pursuant to Indiana Appellate Rule 7(B), this court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Our Supreme Court has explained that the principal role of appellate review should be to attempt to leaven the outliers, "not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We independently examine the nature of Franzell's offense and his character under Appellate Rule 7(B) with substantial deference to the trial court's sentence. *Satterfield v. State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. Franzell bears the burden of persuading this court that his sentence is inappropriate. *Id*.

[14] Franzell contends that his four-year sentence is inappropriate in light of the nature of his offense and his character. He asserts that, as to the nature of his offense, the facts of his offense track the statutory elements and are not unusual, violent, or excessive. As to his character, Franzell concedes that he has a lengthy criminal history but asserts that it "is not as bad as it looks." *Appellant's Br.* at 12. He reasons that, although his criminal history spans twenty-four years, it only contains eight felony and eight misdemeanor convictions. Based on an analysis under Appellate Rule 7(B), Franzell argues that his sentence is inappropriate and that he deserves a community-based sentence or, at worst, the three-year advisory sentence.

[15] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Kunberger v. State*, 46 N.E.3d 966, 973 (Ind. Ct. App. 2015); *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). Franzell was convicted of a Level 5 felony, and the advisory sentence for a Level 5 felony conviction is three years, with a range of between one and six years. Ind. Code § 35-50-2-6(b). Franzell was given a four-year sentence for his Level 5 felony conviction.

[16] As this court has recognized, the nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). "When determining the appropriateness of a sentence that deviates from an advisory sentence, we consider whether there is anything more or less egregious about

the offense as committed by the defendant that 'makes it different from the typical offense accounted for by the legislature when it set the advisory sentence.'" *Moyer v. State*, 83 N.E.3d 136, 142 (Ind. Ct. App. 2017) (quoting *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011)), *trans. denied*. Here, Franzell, while incarcerated for other offenses, contacted his step-daughter from a jail phone to have her obtain narcotics so that he and other inmates could ingest the drugs. *Appellant's App. Vol. 2* at 10. Franzell told the officers that these drugs were a form of payment from someone who owed him money. *Id*. The drugs were brought into the facility in contact solution bottles in order to hide them from the officers. *Id*. Franzell enlisted his step-daughter in his criminal scheme by making her obtain the drugs and find someone to deliver them because she was not comfortable bringing them to the jail. *Id*. The offense is made more egregious by the fact that Pryor, who ingested the drugs, was taken to the emergency room after the officers attempting to interview him noticed that he was acting strange and his eyes were rolling into the back of his head. *Id*. The nature of this offense is clearly aggravating given the fact that Franzell was obtaining an extremely addictive and harmful controlled substance by concealing the substance and having it brought into the facility. We conclude that Franzell's sentence is not inappropriate in light of the nature of the offense.

[17]   The character of the offender is found in what we learn of the offender's life and conduct. *Perry*, 78 N.E.3d at 13. When considering the character of the offender, one relevant fact is the defendant's criminal history. *Johnson v. State*,

986 N.E.2d 852, 857 (Ind. Ct. App. 2013). The evidence presented showed that Franzell has an extensive and lengthy criminal history spanning twenty-four years. Although many of his charges were dismissed or the dispositions are unknown, Franzell has amassed a criminal history consisting of twenty-seven cases containing at least forty-three charges and resulting in approximately sixteen felony convictions and six misdemeanor convictions. At sentencing, Franzell admitted that most of his extensive criminal history is related to or involved the use of illegal drugs, and he reported that he had been using illegal drugs since he was a teenager and continued such use even when incarcerated. *Tr.* at 11; *Appellant's App. Vol. 2* at 32. Over the course of his criminal history, Franzell has had many probation violations. Both the extensive nature of his criminal history and his many violations of probation demonstrate that he is likely to reoffend and continue his pattern of criminal activity. We conclude that Franzell's four-year sentence, which is one year over the advisory sentence, is not inappropriate in light of his character.

## III.  Consecutive Sentences

[18]  Franzell argues that the trial court erred when it ordered that his sentence in the present case be served consecutive to his sentence in Cause 24. He contends that his sentence in the present case should run concurrent with and not consecutive to the sentence he received under Cause 24. He further asserts that the trial court erred in not awarding him credit time to be applied to his present sentence.

[19] Under Indiana Code section 35-50-1-2(e), if after being arrested for one crime, a person commits another crime before being discharged from probation, parole, or a term of imprisonment for the first crime, the terms of imprisonment for the crimes shall be served consecutively. "To determine whether a prisoner is entitled to pre-trial credit for actual time served, we must determine whether the defendant was confined before trial and whether that confinement was the 'result of the criminal charge for which [the] sentence is being imposed.'" *Maciaszek v. State*, 75 N.E.3d 1089, 1092 (Ind. Ct. App. 2017) (quoting *Stephens v. State*, 735 N.E.2d 278, 284 (Ind. Ct. App. 2000), *trans. denied*), *trans. denied*. *See* Ind. Code § 35-50-6-3 (requiring defendant be "confined awaiting trial or sentencing").

> Thus, for example, [i]f a person incarcerated awaiting trial on more than one charge is sentenced to concurrent terms for the separate crimes, he or she is entitled to receive credit time applied against each separate term. However, if the defendant receives consecutive terms, he or she is only allowed credit time against the total or aggregate of the terms.

*Maciaszek*, 75 N.E.3d at 1092 (quoting *Payne v. State*, 838 N.E.2d 503, 510 (Ind. Ct. App. 2005), *trans. denied*).

[20] Here, when Franzell was charged with the crime in the present case, he was in jail serving the remainder of two sentences under Cause 24 and Cause 114. *Appellant's App. Vol. 2* at 27-29. Franzell does not challenge the consecutive sentence as applied to Cause 144, only that he is entitled to have his sentence run concurrent with the sentence in Cause 24, contending that his sentence

under Cause 24 was completed on October 29, 2017. *Appellant's Br.* at 13-16. If we take Franzell's contention as true, then at the time of the instant crime, October 12, 2017, he was still serving his term of imprisonment under Cause 24. Therefore, pursuant to Indiana Code section 35-50-1-2(e), the sentence in the present case is required to be served consecutive to the sentence in Cause 24.

[21] As to Franzell's assertion that he is entitled to credit time for the time he spent incarcerated awaiting trial in this case, such an assertion is entirely dependent on a finding that the sentence in Cause 24 was to be served concurrent with the sentence in the present case. However, Franzell is not entitled to credit time because he was not confined as a "result of the criminal charge for which [the] sentence is being imposed." *Maciaszek*, 75 N.E.3d at 1092. Instead, he was confined on the charges originating from Cause 24 and Cause 114. Therefore, Franzell is not entitled to credit time because, at the time he committed the instant crime, he was serving time for other charges. We conclude that Franzell's argument that he is entitled to additional credit time is without merit.

[22] Affirmed.

Vaidik, C.J., and Altice, J., concur.